372 F.Supp. 1270 (1974)
Frieda SCHICHT et al., Plaintiffs,
v.
George ROMNEY, Secretary of the Department of Housing and Urban Development, et al., Defendants.
No. 73 C 4 (A).
United States District Court, E. D. Missouri, E. D.
March 21, 1974.
William M. Nicholls, St. Louis, Mo., for plaintiffs, and Thomas W. Challis and Robert E. Ahrens, St. Louis, Mo., Associate counsels for plaintiffs.
Donald J. Stohr, U. S. Atty. and David W. Harlan, Asst. U. S. Atty., St. Louis, Mo., for defendants Geo. Romney, Sec., etc. and Elmo O. Turner, Reg. Dir., etc.
Husch, Eppenberger, Donohue, Elson & Cornfeld, St. Louis, Mo., for Riverbend Constr. Co.
Beckemeier & Beckemeier, St. Louis, Mo., for Riverbend Partners, Laclede Town Co. and Jerome Berger.

MEMORANDUM AND ORDER
HARPER, District Judge.
This is a civil suit seeking injunctive and declaratory relief based on the alleged inadequacy of the Final Environmental Impact Statement (hereinafter referred to as EIS) issued by the U. S. Department of Housing and Urban Development (hereinafter referred to as HUD) in connection with the River Bend Apartment Project (hereinafter referred to as Project) in St. Louis, Missouri. The suit arises under the National Environmental Policy Act of 1969, 42 U.S.C. *1271 § 4321 et seq. (hereinafter referred to as NEPA).
Jurisdiction is alleged under 5 U.S.C. § 701 et seq., 42 U.S.C. § 4321 et seq., 28 U.S.C. § 2201 et seq., 12 U.S.C. § 1702 and 28 U.S.C. § 1331. The amount in controversy, exclusive of costs and interest, is alleged to exceed $10,000.00.
The project, now under construction at 4718-28 South Broadway in the City of St. Louis, is designed to be an eight-story, 98 unit apartment building financed under authority of Section 236 of the National Housing Act of 1968, 12 U.S.C. § 1715z-1. The federal defendants are officials of HUD who are responsible for the implementation and carrying out of programs authorized under the National Housing Act of 1968. Pursuant to that authority, the St. Louis Area Office of HUD, with the assistance of the Regional and Central Office Breakthrough staff, have processed and approved the construction of the project.
As required by NEPA, 42 U.S.C. § 4332(2)(C), a draft of the EIS was prepared for the project at the direction of the HUD Office of Community and Environmental Standards. On August 30, 1972, this draft copy was disseminated to sixteen Federal, State and local agencies for their assessment and evaluation of the potential environmental impact of the project. After receiving comments from interested parties a final EIS was issued on November 10, 1972, which included the comments made by the agencies reviewing the draft EIS, as well as adverse comments from private groups and associations. Subsequently, on December 18, 1972, HUD made its commitment to finance the project (Plff's Exhibits 9 and 10).
Plaintiffs filed their complaint, consisting of three counts, on January 5, 1973, and the matter was called to trial before the Court without a jury. At the trial plaintiffs presented evidence only as to Count I and abandoned Counts II and III of their complaint. In Count I the plaintiffs allege that the final EIS prepared by HUD in connection with its commitment to the project is too vague, too general and too conclusionary to form a basis for responsible evaluation of the merits of the proposed project and, therefore, HUD failed to adequately consider the environmental impact of the project due to the inadequacy of the final EIS.
It is undisputed that the provisions of NEPA apply to the project here involved and that there is only one basic issue before this Court. That one basic issue is whether the EIS filed in connection with the project complies with NEPA.
The Eighth Circuit Court of Appeals in Iowa Citizens v. Volpe, 487 F.2d 849, had occasion to deal with the question of the adequacy of an EIS. In that case the Court of Appeals said, l. c. 851-852:
"The Standard of review in cases concerning NEPA is succinctly set forth in Environmental Defense Fund, Inc. v. Corps of Engineers, 470 F.2d 289, 300 (8th Cir. 1972):
"Where NEPA is involved, the reviewing court must first determine if the agency reached its decision after a full, good faith consideration and balancing of environmental factors. The court must then determine according to the standards set forth in §§ 101(b) and 102(1) of the Act whether `the actual balance of costs and benefits that was struck was arbitrary or clearly gave insufficient weight to environmental values.' Calvert Cliffs' Coordinating Committee v. AEC, 146 U.S.App.D.C. 33, 449 F.2d 1109, 1115 (1971).
"In addition, `[t]he court is not empowered to substitute its judgment for that of the agency.' Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).
"Adequacy of the Final Environmental Impact Statement.
"Section 102(C) of NEPA requires the responsible federal agency to `[i]nclude in every recommendation or report on proposals for legislation and *1272 other major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official' on the impact of the action on the environment, including alternatives to the proposed action. Section 102(D) requires the agency to `study, develop and describe appropriate alternatives' to the proposed action. * * *.
"It is well established that NEPA is an `environmental full disclosure law,' such that administrative agencies of the federal government must develop and consider all the environmental consequences of their decisions. Environmental Defense Fund, Inc. v. Corps of Engineers, 470 F.2d 289, 294-95 (8th Cir. 1972). The environmental impact statement required by NEPA is to serve as a basis for consideration of environmental factors by the agency involved and is to provide a basis for critical evaluation by those not associated with the agency. Environmental Defense Fund, Inc. v. Froehlke, 473 F.2d 346, 350-351 (8th Cir. 1972); Environmental Defense Fund, Inc. v. Corps of Engineers, 470 F.2d 289, 297-299 (8th Cir. 1972); Calvert Cliffs' Coordinating Committee, Inc. v. AEC, 146 U.S.App.D.C. 33, 449 F.2d 1109, 1114 (1971). Thus, all federal agencies are to use the environmental impact statement in conducting a process of good-faith balancing of the important environmental factors which apply to any agency action. In short, the policies of NEPA enunciated in Section 101 must be considered and implemented in the policies, regulations, and public laws of the United States `to the fullest extent possible' through the procedural requirements of Section 102(2). Environmental Defense Fund, Inc. v. Corps of Engineers, 470 F.2d 289, 296-297 (8th Cir. 1972); Calvert Cliffs' Coordinating Committee, Inc. v. AEC, 146 U.S.App.D.C. 33, 449 F. 2d 1109, 1114-1115 (1971).
"However, strict though the procedural requirements of Section 102(2) may be, they must be interpreted on a basis of reasonableness. Environmental Defense Fund, Inc. v. Corps of Engineers, 470 F.2d 289, 297 (8th Cir. 1972). `* * * [I]f this requirement is not rubber, neither is it iron. The statute must be construed in the light of reason if it is not to demand what is, fairly speaking, not meaningfully possible, given the obvious, that the resources of energy and research and timeavailable to meet the Nation's needs are not infinite.' Natural Resources Council, Inc. v. Morton, 148 U.S.App.D.C. 5, 458 F.2d 827, 837 (1972). See Environmental Defense Fund, Inc. v. Corps of Engineers, 348 F.Supp. 916, 933 (N.D.Miss.1972); Environmental Defense Fund, Inc. v. Corps of Engineers, 342 F.Supp. 1211, 1217 (E.D.Ark.1972).
"As Judge Stuart noted (at 4 ERC 1758) the environmental statement `to some extent must be examined in light of the particular facts and circumstances surrounding the project * * * in order to determine its sufficiency. The extent of detail required must necessarily be related to the complexity of the environment problems created by the project.' The discussion of environmental effects need not be `exhaustive' but rather need only provide sufficient information for a `reasoned choice of alternatives'. Natural Resources Council, Inc. v. Morton, 148 U.S.App.D.C. 5, 458 F.2d 827, 836 (1972). See Sierra Club v. Froehlke, 345 F.Supp. 440, 444 (W.D.Wis.1972), where the court stated that Section 102(2) does not require that `each problem be documented from every angle to explore its every potential for good or ill.'"
In the instant case, the plaintiffs' major contention is that the EIS lacks a sufficient discussion of "alternatives" for the President, Congress and the various other agencies who wish to comment thereon to make an objective evaluation. The plaintiffs' other contentions relate to total site coverage of the building and parking area, traffic *1273 congestion, impacted schools, distance of shops and stores, increased crime, unreasonable land cost, topography, zoning and hearings.
Before addressing the major issue of alternatives, it is important to recognize some of the constraints which HUD must operate under in administering the 236 program under the National Housing Act (12 U.S.C. § 1701 et seq.). The projects under the 236 program are developed by private parties. These parties in conjunction with an approved lender make application to HUD for assistance under 12 U.S.C. § 1715z-1 (Plffs' Exhibit 8). This application relates to a specific building site with a specific construction proposal. HUD must respond to that application and is not in a position to require that the building be constructed at a different site, or that single family dwellings be constructed instead. The real alternative HUD is faced with is to assist the project or reject it.
The EIS in the instant case discussed the possible uses of the project site as it is now zoned. Lower density single family housing along with the alternative of "no change" was considered. The EIS stated that many alternate locations would create greater levels of environmental impacts, based on existing conditions, and that the only unique feature of the subject site is its bluff location. The EIS concluded that the same basic environmental impacts would result from placing the project at any alternate location within the general surrounding area of the subject site.
In National Resources Defense Council, Inc. v. Morton, 148 U.S.App.D.C. 5, 458 F.2d 827, 837 (1972), the Court said: "Where the environmental aspects of alternatives are readily identifiable by the agency, it is reasonable to state themfor ready reference by those concerned with the consequences of the decision and its alternatives."
In the instant case, the environmental consequences of the reasonable alternatives were found to be basically the same. These impacts are stated in the EIS at page 33 to include increasing building bulk and height, raising densities, providing living accommodations for low and moderate income groups and minorities and all related construction activities. These impacts and others are fully discussed throughout the EIS. In Environmental Defense Fund, Inc. v. Armstrong, 352 F.Supp. 50, 57 (N.D. Cal.1972), the Court said: "The question to be asked is whether all reasonable alternatives to the project have been considered, even if some were only briefly alluded to or mentioned." This Court believes the answer to this question is in the affirmative.
The Court now turns to the plaintiffs' other contentions which relate to total site coverage of the building and parking area, traffic congestion, impacted schools, distance of shops and stores, increased crime, unreasonable land cost, topography, zoning and hearings. After examining all the evidence presented at the trial, the Court finds these contentions to be completely without merit. A discussion of these contentions would serve no purpose except to unduly lengthen this opinion. When the standards of judicial review are applied to the facts of this case it is apparent that there has been no showing that HUD's decision was in any way arbitrary or capricious. This record does not reveal any overriding environmental concerns, nor did plaintiffs' evidence bring to light any additional considerations which would negate that finding.
The District Court in Environmental Defense Fund, Inc. v. Corps of Engineers, 342 F.Supp. 1211, 1217 (E.D. Ark.1972); affirmed 470 F.2d 289 (8th Cir. 1972); cert. denied 409 U.S. 1072, 93 S.Ct. 675, 34 L.Ed.2d 661 (1972), suggested that no agency can develop a perfect EIS no matter how well staffed, or how objective. Perfection is not the standard of review. The standard relates to assuring that environmental consequences be revealed and identified for agency and public consideration. The environmental impact statement in this *1274 case, while somewhat brief in its discussion of alternatives, fulfilled the requirements of NEPA under the facts presented.
Accordingly, for the reasons stated above and on the basis of the entire record herein, the plaintiffs' prayer for injunctive relief should be denied and this action dismissed.
This memorandum opinion is adopted by the Court as its findings of fact and conclusions of law, and the clerk of the Court is directed to enter judgment dismissing said cause of action.